UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00056-LLK

RONALD M. RANNELLS                                                                                        PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security                                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits.  The fact and law summaries of Plaintiff and Defendant are at Dockets Number ("DN") 19 and 24.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  [DN 16].

Plaintiff argues that the Administrative Law Judge's ("ALJ's") findings at the second and third steps of the sequential evaluation process are not supported by substantial evidence.  Because the arguments are persuasive, the Court will REMAND this matter to the Commissioner for a new decision.

**The ALJ erred in not recognizing that Plaintiff suffers from a severe cardiac impairment.**

Plaintiff argues that the ALJ erred in not recognizing that he suffers from a severe left bundle branch block in his heart.  [DN 19 at 2-4 referencing Administrative Record ("AR") at 15].

At the administrative hearing, Plaintiff emphasized the importance (in his opinion) of his cardiac impairment to his disability claim.  In his written decision, the ALJ mentioned Plaintiff's cardiac impairment only once (in a conclusory, passing manner):  "There is evidence of treatment for cardiac impairment, however, [Plaintiff] has not required any interventional or emergent care during the alleged period of disability."  [AR at 17 referencing AR at 332-62, 841, 882-83, 893].

The ALJ was required, at step two of the sequential evaluation process, to identify Plaintiff's severe, or vocationally significant, impairments.  *See* 20 C.F.R. § 404.1520(a)(4)(ii). Step 2 is a "de minimis

hurdle," intended only to "screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576–77 (6th Cir. 2009) (internal citations omitted). Thus, if Plaintiff's cardiac impairment had "more than a minimal effect" on his ability to do basic work activities, the ALJ was required to treat it as "severe" and consider (at subsequent steps of the evaluation process) its impact on Plaintiff's ability to work. *Id.*

The ALJ found that Plaintiff retains the ability to perform light work. [AR at 16.] Light work requires significant exertional abilities, including standing/walking 6 hours per 8-hour workday (with sitting during the remaining 2 hours), lifting up to 20 pounds at a time, and frequent lifting/carrying of objects weighing up to 10 pounds. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. Because Plaintiff's left bundle branch block in his heart would be expected to have more than a minimal effect on his ability to do basic work activities and particularly the exertional demands of light work, the ALJ erred in not recognizing that Plaintiff suffers from a severe cardiac impairment. For the reasons below, that error was not harmless.

The ALJ's error of not labelling Plaintiff's cardiac impairment as "severe" at Step 2 of the sequential evaluation process did not "constitute reversible error" if the ALJ's decision reflected consideration (at subsequent steps) of the combined effects of all severe and non-severe impairments on Plaintiff's ability to work. *Jamison v. Comm'r*, No. 1:07CV152, 2008 WL 2795740, at *8 (S.D. Ohio July 18, 2008) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)). The ALJ did not, however, (fairly) consider the impact of Plaintiff's cardiac impairment on his ability to work. Rather (as noted above), the ALJ dismissed the impairment as vocationally insignificant because it required no "interventional or emergent care." [AR at 17]. Interventional cardiology is "the subspecialty of cardiology that deals specifically with the catheter-based treatment of heart diseases." American Medical Association website, https://www.ama-assn.org/specialty/interventional-cardiology. Stedman's Medical Dictionary defines "emergent" as "arising suddenly and unexpectedly, calling for quick judgment and prompt action." In fact, Plaintiff **did** require interventional care because he underwent a cardiac

2

catheterization in July 2015. [AR at 124]. In any event, a cardiac impairment need not have progressed to the level of requiring catheterization or other prompt action to be considered vocationally significant. In this case, as in *Jamison*, the harmless-error rule of "*Maziarz* is distinguishable … because it is not clear that the ALJ considered plaintiff's cardiac impairment at the other steps of the sequential evaluation process." *Jamison v. Comm'r*, No. 1:07CV152, 2008 WL 2795740, at *9 (S.D. Ohio July 18, 2008) (referencing *Maziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir.1987)).

**The ALJ erred in failing to discuss whether Plaintiff's degenerative disk disease satisfies Listing 1.04(A).**

Plaintiff argues that the ALJ erred in failing to discuss whether his degenerative disk disease satisfies Listing 1.04(A) at Step 3 of the sequential evaluation process. [DN 19 at 5-7]. In fact, the ALJ did not discuss whether **any** of Plaintiff's impairments satisfies any medical impairment listed in Appendix 1 of the regulations. The entirety of the ALJ's Step 3 analysis lacks specificity:

> The Disability Determination Service determined that he claimant's impairments do not meet the criteria of any of the listed impairments. No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. The undersigned has reviewed the records and finds that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1.

[AR at 16].

The ALJ must discuss whether Plaintiff satisfies a particular Listing "where the record raises 'a substantial question as to whether [he] could qualify as disabled' under a listing." *Smith-Johnson v. Comm'r*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Plaintiff shows that the record raises such a question by "point[ing] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Listing 1.04(A) provides that the following disorder of the spine is per-se disabling:

> 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A).

Plaintiff points to specific evidence in the administrative record that his degenerative disc disease could satisfy the above requirements of Listing 1.04(A):

> MRI evidence shows the Plaintiff has evidence of nerve root compression with supportive clinical findings. A May 24, 2016 lumbar MRI showed mild to moderate right paracentral protrusion abutting the right S1 nerve root. [Tr. 687]. He was diagnosed with right leg radiculopathy. [Tr. 689].
>
> Physical examination findings showed positive lumbar radicular symptoms. [Tr. 430-431]. Range of motion was decreased in lumbar flexion, extension, and hip flexion. [Tr. 764, 818, 830, 936]. Weakness was demonstrated in the left leg. [Tr. 764]. Sensation examination showed numbness, decreased touch sensation, and abnormal sensation in the bilateral thighs. [Tr. 497, 514, 764]. Positive straight leg raising test was also demonstrated. [Tr. 430-431, 497, 818, 936].

[DN 19 at 6].

While the ALJ recognized (for purposes of determining Plaintiff's RFC for light work) that a May 2016 lumbar MRI revealed "degenerative changes at L5-S1, including disc space narrowing and a broad-based protrusion and mild bilateral foraminal stenosis" [AR at 17 referencing AR at 687], the ALJ did not recognize that the same MRI showed that the protrusion "abuts the right S1 nerve root." [AR at 687]. "Evidence of nerve root compression" is the defining feature of Listing 1.04(A). Therefore, the ALJ erred in failing to discuss whether Plaintiff's degenerative disk disease satisfies Listing 1.04(A).

### The ALJ did not err in failing to recognize that Plaintiff suffers from severe PTSD.

Plaintiff's remaining argument is that the ALJ erred in failing to recognize that he suffers from severe post-traumatic stress disorder (PTSD)) is unpersuasive. [DN 19 at 5]. For the reasons below, the argument is unpersuasive.

4

Plaintiff experiences psychological symptoms due to "separation from wife, death of sister-in-law and nephew in motor vehicle accident in 2009, primary caregiver to children (raising nephew), chronic pain." [AR at 714]. These symptoms, however, are dispersed among a wide range of clinical categories, including depression, anxiety, and PTSD. [AR at 716-17]. The ALJ found that Plaintiff's "medically determinable impairment of depressive disorder does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." [AR at 15].

While Plaintiff cites pages 717 and 720 of the administrative record in support of a medical "diagnosis of PTSD," the Court finds no such diagnosis on those pages. [DN 19 at 5 citing AR at 717, 720]. The Court declines to search 1,023 pages of the administrative in search of a PTSD diagnosis. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

The ALJ did not err in failing to recognize that Plaintiff suffers from severe PTSD for two reasons. First, because Plaintiff has not shown that an acceptable medical source diagnosed him with PTSD, he has not shown that he suffers from medically determinable PTSD. *See* 20 C.F.R. § 404.1520(a)(4)(ii)) ("At the second step [of the sequential evaluation process], ... [i]f you do not have a severe medically determinable ... impairment ..., we will find that you are not disabled."). Second, the ALJ found that Plaintiff is only "mildly" mentally limited in these four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing oneself. [AR at 16]. The ALJ correctly indicated that, "[i]f we rate the degrees of your limitation as 'none' or 'mild' [in these four areas] we will generally conclude that your [mental] impairment(s) is not severe." *Id.* (quoting 20 C.F.R. § 404.1520a(d)(1)).

5

**ORDER**

Because the ALJ's second and third step findings are not supported by substantial evidence, this matter is hereby REMANDED to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

May 6, 2020

Lanny King, Magistrate Judge
United States District Court